# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MASSACHUSETTS

## EASTERN DIVISION

| | |
|---|---|
| **In re** <br><br> **WENTWORTH HILLS, LLC, and** <br> **WENTWORTH HILLS PROPERTY OPERATOR, LLC,** <br><br><br>                **Debtors** | **Chapter 11** <br> **Case No. 11-11448-FJB** <br> **(Jointly Administered)** <br><br> **(NOT FOR PUBLICATION)** |

### MEMORANDUM OF DECISION AND ORDER ON
### OBJECTION OF MANSFIELD CO-OPERATIVE BANK TO CONFIRMATION

Wentworth Hills, LLC and Wentworth Hills Property Operator, LLC, the debtors in these jointly administered chapter 11 cases, have proposed a joint chapter 11 plan under which the secured claim of Mansfield Cooperative Bank would be "crammed down" to the value of its collateral—$1.3 million by the Debtors' reckoning, $2.45 million by Mansfield's—and paid monthly payments thereon for five years at 5% interest according a 25-year amortization schedule, with the balance due on the fifth anniversary of confirmation.  Mansfield (i) takes issue with the Debtors' valuation of its collateral and has objected to confirmation on the grounds that (ii) the interest rate for payment of its secured claim should be 7% instead of 5%, (iii) the plan is not feasible, and (iv) the plan was not proposed in good faith.  After an evidentiary hearing held on December 13, 2011, and for the reasons set forth below, the court now determines the value of the secured claim to be $1,953,000, concludes that the Debtors have appropriately fixed the rate of interest at 5%, finds that the plan is feasible, and finds that the plan has been proposed in good faith.[1]  Accordingly, the court now overrules Mansfield's objections to confirmation and will issue a procedural order governing the sale of the Debtors' equity interests.

---

[1] Mansfield's initial objection to confirmation included other grounds that Mansfield did not press at the confirmation hearing or in its proposed findings and conclusions.  The court need not address them.

i.    **VALUATION**

The plan does not value the property but promises payment of Mansfield's claim according to the value as determined by the court.  The plan therefore requires that the court determine the value of the realty and personalty (together "the Golf Course") that constitutes the Debtors' golf course and Mansfield's collateral.  The Debtor takes the position that the value is $1.3 million.  Mansfield, which bears the burden of proving a higher value, contends that the Golf Course has a value of $2.45 million and therefore that its claim of $2,129,083, plus postpetition interest, costs, and fees, is fully secured.  Mansfield holds a mortgage on the realty, subject only to municipal tax liens totaling $47,000, and a security interest in certain cash and personalty of approximately $40,000 in value.  Both parties' appraisers ably supported their dramatically divergent positions, with the result that little is certain about the value except that it lies somewhere between the parties' positions.  Still, Manfield's appraiser, Jeffrey Dugas, made a decidedly more persuasive case, first because of his much greater familiarity and experience with golf courses in Massachusetts and Rhode Island and with this course in particular, second because of the case he made for use of comparable sales as a factor in this valuation, and third because he argued persuasively that the Golf Course could be operated at substantially lesser expense than the Debtor's appraiser contends (though I do not find that it can operated quite as inexpensively as Dugas contends).  Accordingly, I find that the value of the Golf Course is closer to Mansfield's position than the Debtors' and find the value to be fairly fixed at $2 million, leaving Mansfield with a secured claim of $1,953,000 ($2,000,000 minus municipal liens of $47,000).

ii.    **INTEREST RATE**

With respect to the interest rate necessary to ensure that the deferred cash payments have a present value equal to the amount of Mansfield's secured claim, as required by 11 U.S.C. § 1129(b)(2)(A)(i)(II), the Court finds that no efficient market exists for the type of "loan" effected by the

proposed cramdown treatment of Mansfield's claim and therefore that the formula approach endorsed

in *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004) should govern. The parties agree that the prime rate of

interest is presently 3.25 percent. The Court finds that the Debtors' risk premium of an additional 1.75

percent satisfies the formula approach endorsed in *Till*. Here, a balloon payment is due in 5 years, until

which time the Debtors are to amortize the debt on a 25-year schedule, and, within three years, pay off

the municipal liens. Payments on the municipal liens will improve Mansfield's position by a

corresponding amount. As is usually the case in cram-down situations, the debt-to-value ratio is 100%.

Payment of the debt, though certainly more challenging at $2 million than at $1.3 million, is still within

the Debtors' ability and projections. This is especially true in view of Mansfield's own evidence that

projected expenses, especially equipment and real estate tax allocations, can be considerably reduced.

On these facts, a 1.75% risk factor is appropriate, a conclusion supported by the numerous cases the

Debtors have cited.


iii.     **FEASIBILITY**

Mansfield contends that the Debtors have not satisfied the requirement in 11 U.S.C. §

1129(a)(11) of a showing that confirmation of this plan "is not likely to be followed by the liquidation, or

the need for further financial reorganization, of the debtor." The plan is not feasible, Mansfield

contends, for two reasons: the inexperience of present management, as evidenced by the Debtors'

failure to meet their income projections for this year; and the major drain on cash flow that will result

from the valuation of Mansfield's secured claim at an amount 50% higher than the Debtors had

budgeted for.

I begin with the latter concern. The Debtors' projections were based on a valuation of the

secured claim at $1.3 million; at this amount, annual payments on the secured debt totaled $91,196.

With a valuation of $1,953,000, annual payments on Mansfield's secured debt in the five years after

confirmation would increase to $137,004.44, an increase of $45,808.44.  This amount is $3,500 greater

than the Debtors' projected net operating income after debt service in the first year after confirmation.

With increased debt service, the Debtors would thus initially operate at a small loss.  The Debtors'

projections show sufficient cash reserves to handle a one-time loss of this magnitude.  In subsequent

years, projected revenue after debt service would increase slowly, with the Debtors operating at a small

and slowly-growing profit after debt service.  This is not a picture that inspires strong confidence but

neither does it indicate that the Debtors are "likely" to need further financial reorganization.  With

respect to Mansfield's other concern about feasibility—that while projected income is realistic, present

management is not sufficiently experienced or competent to achieve that level of income—the Court

finds that the Debtors have carried their burden of proof.  The bankruptcy, a change of management,

and a hurricane are sufficient to explain the failure to meet projections this year.  Present management,

though not highly experienced, is certainly not incompetent and will make adjustments as necessary.  It

inspires confidence that the Debtors' projections are conservative, especially on the expense side, and

that Mansfield itself believes the Debtors can achieve projected revenues at considerably less cost.  I

conclude that the plan satisfies § 1129(a)(11).

**iv.   GOOD FAITH**

Mansfield's last objection is that the Debtors have not satisfied the requirement in § 1129(a)(3)

that the plan be proposed in good faith.  As evidence of bad faith, Mansfield contends that (1) the

Debtors did not sufficiently negotiate with Mansfield and other creditors; (2) the Debtors are proposing

to pay off municipal liens in three years, a year faster than the Bankruptcy Code requires, and therefore

are unfairly favoring the municipal creditors; (3) the Debtors initially  proposed a plan (not the present

plan) under which their owner, Potomac Realty Capital LLC ("Potomac"), would have retained the equity

in exchange for new value but without provision for competing bids for that equity, (4) the initial plan

also provided that Potomac would receive a lien to secure its capital contribution, thus giving it priority

over unsecured creditors, and (5) in the First Amended Plan, the Debtors disclose that Potomac holds an

unsecured claim in the amount of $146,935.74, which claim, Mansfield contends, should be

recharacterized as equity instead of debt, and that the payment of this claim as a general unsecured

claim would violate the absolute priority rule.

The Court finds no bad faith in any of this.  First, the Court is aware of no obligation to negotiate

and finds that the Debtors did in fact tentatively explore avenues of compromise, in part by floating

their initial plan, but found a generally frosty reception.  Second, when a debtor pays a senior municipal

lien, junior secured creditors, such as Mansfield, are generally pleased because that payment increases

the value of the junior's security.  There is no harm to Mansfield or any creditor, and no bad faith, in the

satisfaction of municipal tax liens in three years instead of four.  Third, the fact that the initial plan did

not provide for an auction of the equity, and did provide for the securing of Potomac's capital infusion,

is of no moment; § 1129(a)(3) asks whether the plan at issue, not earlier iterations, was proposed in

good faith.  Nor does the floating of a plan with potentially objectionable provisions constitute bad faith;

in part, the initial iteration of a plan functions to test the waters.  Creditors do sometimes accept

without objection provisions to which they could validly object.  Fourth, the present plan does not

purport to determine that Potomac's unsecured claim will be allowed as an unsecured claim.  That issue

is entirely collateral to the plan.  In relevant part, the plan merely makes provision for the payment of

allowed, nonpriority unsecured claims.  There is no bad faith in its doing so.

**ORDER**

For the reasons set forth above, the Court hereby determines the value of Mansfield's secured claim to be $1,953,000 and overrules Mansfield's objections to confirmation.  The court will issue a separate order governing the sale of the Debtors' equity interests.


Date:  December 16, 2011

_____

Frank J. Bailey

United States Bankruptcy Judge